# Vertrees v. Vogel.

(Decided Oct. 29, 1937.)

H. O. WILLIAMS for appellant.

WILLIAM A. EARL for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Upon a directed verdict for $780 with interest the court entered judgment in favor of Conrad Vogel, against Evan E. Vertrees, and dismissed a counterclaim filed by Vertrees v. Vogel.

About the year 1920, after some 12 years of experimenting, Conrad Vogel began the manufacture of imitation vanilla and lemon flavorings in Louisville, Ky. These flavorings apparently had merit and Vogel had a brisk demand therefor. Vertrees was then in the grocery business and had handled and sold these flavorings for years, and he and Vogel entered into this arrangement:

"Know all men by these presents:

"That I, Conrad Vogel of the City of Louisville, Kentucky, grantor herein, for the consideration of $2,000.00, cash in hand paid to me by Evans E. Vertrees, and the further sum of one promissory note for $1,000.00 dated July 26th, 1934, due six months after date with interest thereon at the rate of 6% per annum from date until paid receipt of the said $2,000.00 and the note is hereby acknowledged, do hereby grant, bargain, sell, transfer and convey unto the said grantee, his heirs and assigns, the following described goods, chattels and effects, to-wit:

"All stock and trade fixtures and property now owned and used by the said grantor in connection with his business known as Vanilla Extract Busi-

ness in the City of Louisville, Kentucky, including formula for the manufacturing and making vanilla extracts of all kinds, and all contracts excepting outstanding book accounts, bills receivable and claims for money, also the good will established by the said grantor in connection with his said vanilla extract business in the City of Louisville, Kentucky, said grantor hereby agrees, assigns and transfers to said grantee all of his interest in said property including machinery and stock on hand contained in said premises by him at 3920 River Park Drive, Louisville, Kentucky.

"Also the right to use the name of Vogel's Imitation Vanilla Flavor vvv Manufactured by Vogel's Vanilla Company, Louisville, Kentucky. The said grantor further agrees not to engage in the vanilla business or vanilla extract business in the City of Louisville, or the United States, during his natural life, nor permit or allow his name to be used in connection with any other vanilla manufacturing company in the United States or elsewhere.

"It is the purpose of this instrument to convey to said grantee all stock and trade fixtures and personal property now owned and used by the said grantor in connection with his extract and vanilla business, together with the formula owned by the grantor, with the further right of the grantee to demand of the grantor how to mix and use said formula and the said grantor agrees with said grantee to give him all proper assistance within his power to mix and prepare said vanilla extracts according to the formula owned and held by said grantor and to turn over to said grantee in proper writing as near as he practically can all ingredients together with the quantity of mixture in preparing and manufacturing vanilla extracts and in other manufacturing ingredients used by the grantor in his said business located in Louisville, Kentucky.

"The said grantor further agrees and covenants with the grantee that he will protect him against any claim or claims of any kind or character whatever against said business and against anyone making any claim in and to the said formula or the manufacturing of said vanilla or other extracts, and further guarantees that no person or persons what-

ever have any right to use, claim or make vanilla extracts from said formula and that he has not divulged said formula to any person and no one, save himself, has the secret for the preparation and mixture used in said formula for the manufacture of said vanilla extracts, and he will forever guarantee the exclusive use of said formula to the said grantee.

"The said grantor has this day prepared and sworn to a statement indicating correctly all his creditors, together with the amounts due and owing them, said statement to be a true and accurate account of all his creditors and said statement is filed with this Bill of Sale and made part thereof and marked 'Exhibit A'.

"In testimony whereof, witness the signatures of the grantor and grantee this the 26th day of July, 1934.

"Conrad Vogel.
"_____.

"Witnesses:
    "William A. Earl
    "Thixton I. Sprenger."

Vertrees paid $220 on this $1,000 note and refused to make further payments, and on March 28, 1935, Vogel sued him for the $780 balance due thereon. Vertrees by answer and counterclaim filed May 3, 1935, asked for the cancellation of this note and to recover of Vogel the $2,220 he had paid him and $1,500 expended by Vertrees in preparing a building and removing this machinery, etc., to it and re-erecting it therein because:

"Defendant states that upon taking over said formula he discovered that the same was not a proper formula for the manufacturing of commercial vanilla extracts or any products; that he thereupon made numerous demands of the plaintiff to correct said formula so as to produce a salable product; that the plaintiff failed and refused to lend any such assistance; that, therefore, the formula which was the principal purchase made by this defendant, became of no value to this defendant; that the products attempted to be manufactured therefrom were not salable. * * *

"Defendant further states that the payments made on said note were made prior to the time that

he discovered the said formula to be worthless; that immediately upon this discovery he notified the plaintiff that he would not pay any more on said note. * * *

"Comes the defendant, Evan E. Vertrees, and for his amended answer and counterclaim herein, states, that by the provisions of the written contract between the parties, it was further provided that the plaintiff guaranteed that the formula was secret and that no one save himself had the same, and that he forever guaranteed the exclusive use of the said secret formula to the grantee, defendant herein, and that the plaintiff violated the said alleged guarantee in that the said formula was not secret and that other people used the same."

This action was tried on Feb. 26, 1936, and on the trial Mr. Vertrees testified as a witness and admitted that in July, and August, 1935, two months after filing his answer he was distributing to his grocery trade advertising circulars containing this:

"Here's More Good News—Vogel's Vanilla and Lemon Flavoring for Making Cakes, Ice cream, Puddings, Sauces, Candy and Icings. More economical, contains no alcohol, does not cook or freeze out. The flavor positively stays in. No doubt you have tried all the rest, now buy the best. Ask for it by name and get Vogel's. Sold on a money-back guarantee."

Vertrees said this in his cross-examination:

"Q. Was there any time that you asked him (Vogel) to come down and assist you in any way in making this vanilla, that he refused to do so? A. No, sir."

Mr. Vertrees paid $200 on this note on Feb. 7, 1935, and was then apparently satisfied but after that he became dissatisfied and Vogel on March 5, 1935, went over to see him and Vertrees there in the presence of Vogel made up a batch of the vanilla flavoring. Vogel testifies this batch was made according to the formula he had given to Vertrees and the latter does not dispute that. While that batch was yet warm Vogel filled two bottles from it, one of which he kept and one he gave to Vertrees. The next day Vertrees paid Vogel $20 on his note. Vogel returned on March the 11th, and again

filled two bottles from the batch made on March 5th, one of which he kept and one he gave to Vertrees. Vertrees admits he never thereafter asked Vogel for any aid or instruction.

Vogel exhibited his two bottles in court upon the trial of this case about a year later. The evidence is undisputed that these bottles were clear and in prime condition. The record does not show what Vertrees did with the two bottles that were given him.

A Mrs. Nancy Joplin had handled these Vogel's flavorings for about ten years. She was a jobber. She bought them in large lots from Vogel and then sold them in smaller lots to the retailers. After Vertrees bought out Vogel she continued to handle these flavorings under the same arrangement. On March 21, 1935, Mr. Vertrees asked Mrs. Joplin for a list of her customers and she declined to furnish it, whereupon Vertrees refused to make further sales to her and, after about six weeks, Mrs. Nancy Joplin began the manufacture and sale of a line of imitation flavorings which she called "Nancy's Pride." Vertrees suspected Vogel had furnished the aforesaid Nancy with her formula but the undisputed evidence is that said Nancy Joplin obtained the formula for making "Nancy's Pride" flavorings through a Mr. Irons, a representative of Unger & Co., a firm engaged in manufacture and sale of chemicals in New York City.

Vertrees argues that, if Vogel furnished to Mrs. Joplin the formula he had sold him, then Vogel had violated his contract with him, and, if Mrs. Joplin obtained her formula from Unger & Co., then the formula sold him by Vogel was not a secret formula and the note sued on was obtained by fraud.

If Mr. Vertrees will read his contract he will see Mr. Vogel did not claim to have or to sell the only existing formula for making vanilla flavoring. There are doubtlessly many formulas for making imitation vanilla and other flavorings, that have been worked out by different chemists and each has more or less value, but what Vogel sold to Vertrees was a formula worked out by Vogel and a chemist named Oppel after about twelve years of experiment and which had proven to have unusual merit and to produce a product of high quality and ready sale. This is what Vogel contracted to sell Vertrees and covenanted he had not divulged and would not divulge to others, and there is no proof of any fail-

ure of either Vogel or the Vogel formula to do everything stipulated in the contract, hence the trial court did not err in directing a verdict for Vogel.

Judgment affirmed.